UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
at Baltimore

IN RE:
DEDRE V. FEYIJINMI                    *    Case No.: 14-26170
    Debtor
                                                *    Chapter 13

\*   \*   \*   \*   \*   \*   \*

DEDRE V. FEYIJINMI                    *
    Plaintiff
                                                *

v.
                                                *    Adv. Pro. No.: 21-00072

STATE OF MARYLAND
CENTRAL COLLECTION UNIT         *
    Defendant
                                   *   \*   \*   \*   \*   \*

**DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)**

       The State of Maryland Central Collection Unit, by its attorneys, Brian E. Frosh, Attorney General of Maryland; Susan C. Scanlon, Assistant Attorney General; and Michael D. Watts, Staff Attorney; hereby moves to dismiss Plaintiff's Amended Complaint to Determine Dischargeability of Debt Owed to State of Maryland Central Collection Unit Pursuant to 11 U.S.C. § 1328 and for Civil Contempt for Violating Discharge Injunction Pursuant to 11 U.S.C. §§ 524 and 105 (Complaint), pursuant to Fed. R. Civ. P. 12(b)(6), made applicable to this adversary proceeding by Fed. R. Bankr. P. 7012, and in support thereof states:

**FACTS**

       1.     Debtor/Plaintiff, Dedre Vaniece Feyijinmi was charged with fraudulently obtaining unentitled benefits from the Baltimore County Department of Social Services (DSS). She entered into a plea agreement in the Circuit Court for Baltimore County on December 8,

1

2006, in criminal case number 03-K-06-004436.

2. Under the agreement, Plaintiff received a probation before judgment (PBJ) for defrauding the DSS and consented to pay a judgment of restitution in the amount of $14,487.00 to the Maryland Division of Parole and Probation (DPP), Exhibit 1, Judgment of Restitution.

3. Md. Code Ann., Crim. Proc. § 11-603 allows for entry of a judgment of restitution when "as a direct result of the crime," a victim suffers direct-out-of-pocket loss. Here, Plaintiff's fraudulent application for unentitled benefits directly led to out-of-pocket loss for the DSS.

4. The court granted Plaintiff's request for expungement of the criminal case on January 18, 2011, despite her failure to satisfy the accompanying restitution obligation.

5. DPP referred the debt to CCU on or about February 18, 2011, as the debtor failed to repay the ordered restitution.

6. In May 2013, CCU prepared and filed a garnishment of wages in the expunged case. The Baltimore County Circuit Court clerks were unsure how to process the garnishment in an expunged case.

7. After much discussion and interagency cooperation, the State's Attorney for Baltimore County filed the "State's Motion to Process Garnishment of Wages" on September 30, 2013. Exhibit 2, State's Motion to Process Garnishment of Wages. The motion stated "[t]he State defers to the Court, and agrees with the Court's letter dated May 21, 2013, that indicates no reason as to why expungement of a criminal case also vacates a civil judgment that was entered in the above [criminal] matter." *Id*.

8. The court granted the motion and the Clerk of the Court indexed the judgment as a civil judgment in case number 03-C-13-011136, as required by Md. Code Ann., Crim. Proc. § 11-609, on October 7, 2013.

9. A garnishment of wages was issued shortly thereafter on November 20, 2013.

10. On October 21, 2014, Plaintiff filed for relief under Chapter 13 of the United States Bankruptcy Code.

11. Plaintiff listed Defendant, the State of Maryland Central Collection Unit (CCU), as an unsecured creditor on Schedule F and CCU appeared on the creditor matrix.

12. CCU is a governmental unit of the State of Maryland within the Department of Budget and Management and is the statutory assignee of DPP's delinquent accounts.

13. Plaintiff received an Order of Discharge on February 26, 2020.

## **STANDARD**

14. A defendant may move to dismiss a complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

15. A Rule 12(b)(6) motion tests the legal sufficiency of a complaint. *Hall v. Greystar Mgmt. Servs., L.P.*, 637 F. App'x 93, 99 (4th Cir. 2016).

16. For purposes of a motion to dismiss under Rule 12(b)(6), the court should accept all well-pleaded allegations set forth in the Plaintiff's Complaint as true. *Mylan Lab'ys, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

17. A court may order a Rule 12(b)(6) dismissal if relief could not be granted under any set of facts consistent with the allegations. *Conner v. Am. Arb. Ass'n*, 310 F. App'x 611, 613 (4th Cir. 2009) (*citing Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).

18. In ruling on a motion to dismiss, courts are not bound to accept as true legal conclusions couched as factual allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

**ARGUMENT**

### I. THE COURT SHOULD DISMISS COUNT 1 OF THE COMPLAINT AS PLAINTIFF'S DEBT IS NONDISCHARGEABLE UNDER 11 U.S.C. § 1328(a)(3)

**A.  Federal law, not Maryland state law, determines the meaning of "conviction" under § 1328(a)(3)**

19.     11 U.S.C. § 1328(a)(3) prevents a court from granting discharge of a debt "for restitution, or a criminal fine, included in a sentence on the debtor's conviction of a crime."

20.     Plaintiff's argument that a PBJ falls outside the scope of § 1328(a)(3) relies entirely on the mistaken belief that Maryland state law controls the definition of "conviction" under the Bankruptcy Code.

21.     Absent explicit congressional intent to incorporate state law, however, the meaning of a term in a federal statute is a question of federal law. *E.g., Yanez-Popp v. U.S. I.N.S.,* 998 F.2d 231, 236 (4th Cir. 1993).

22.     The Supreme Court has long held that federal law, not state law, governs issues of nondischargeability. *Grogan v. Garner*, 498 U.S. 279, 284 (1991).

23.     Federal law, thus, determines which criminal dispositions constitute a "conviction" under § 1328(a)(3). *In re Wilson*, 249 B.R. 503, 505 (Bankr. E.D. Ark.), *aff'd*, 252 B.R. 739 (B.A.P. 8th Cir. 2000); *see also In re Reinheimer*, 509 B.R. 12, 18 (Bankr. D. Md. 2014) ("While the underlying validity of a creditor's claim is determined by state law, the issue of non-dischargeability is a matter of federal law governed by the Bankruptcy Code."); *In re Bravo*, 582 B.R. 227, 235 (Bankr. W.D. Wash. 2018) (holding that state law definitions and labels do not determine dischargeability).

**B. Federal law dictates that a "conviction" under § 1328(a)(3) only requires a finding of guilt, not a formal adjudication**

24.     The Supreme Court held in *Dickerson v. New Banner Inst., Inc.*, 460 U.S. 103,

4

111-13 (1983), that a formal adjudication or judgment of guilt is unnecessary for a criminal disposition to qualify as a "conviction" under federal law.

25. The *Dickerson* Court stated that it was "plain that one cannot be placed on probation if the court does not deem him to be guilty of a crime." *Id.* at 113–14.

26. When interpreting federal statutes where Congress has left the term "conviction" undefined, federal courts since *Dickerson* have consistently rejected the argument that a "conviction" requires a final judgment. *Aldaco v. RentGrow, Inc.*, 921 F.3d 685, 687 (7th Cir. 2019) (holding that a guilty plea qualified as a "conviction" under the Fair Credit Reporting Act); *see also United States v. Pritchett*, 749 F.3d 417, 425–27 (6th Cir. 2014) (holding that a deferred adjudication constituted a "conviction" under the Controlled Substances Act); *United States v. Jackson*, 863 F. Supp. 1462, 1466-67 (D. Kan. 1994) (holding that for purposes of Federal Rule of Evidence 609 permitting impeachment of a defendant by prior conviction, a deferred adjudication is a "conviction").

27. The Fourth Circuit has joined these other circuits in following this proper application of *Dickerson*, including making explicit holdings that a disposition under Maryland's PBJ statute constitutes a "conviction" for purposes of federal immigration, *Yanez-Popp v. U.S. I.N.S.*, 998 F.2d 231, 236 (4th Cir. 1993) (*citing Dickerson*), and sentence enhancements statutes, *United States v. Bagheri*, 999 F.2d 80, 84 (4th Cir. 1993).

28. Definitions under other relevant federal statutes can also further inform the interpretation of terms used, but undefined, in the Bankruptcy Code. *In re Ryan*, 389 B.R. 710, 719 (B.A.P. 9th Cir. 2008).

29. Multiple federal statutes explicitly include deferred adjudications within the definition of "conviction." 42 U.S.C. § 1320a-7 (exclusion from federal health programs based

on criminal convictions); 8 U.S.C. § 1101(a)(48) (ability to receive a visa under immigration law due to criminal convictions).

**C. Deferred adjudications, such as a probation before judgment, necessitate a finding of guilt and thus constitute a conviction under § 1328(a)(3)**

30. The Eighth Circuit Bankruptcy Appellate Panel Court directly ruled on this matter in *In re Wilson*, 252 B.R. 739, 742 (B.A.P. 8th Cir. 2000), holding that a "conviction" under § 1328(a)(3) includes a guilty plea followed by a sentence of probation without formal entry of a conviction.

31. The *Wilson* court appropriately applied the *Dickerson* Court's reasoning to the Bankruptcy Code, concluding that an implicit finding of guilt is dispositive of a "conviction" under § 1328(a)(3). *Id*. at 743.

32. Maryland's deferred adjudication statute, Md. Code Ann., Crim. Proc. § 6-220(b)(1), explicitly states "[w]*hen a defendant pleads guilty or nolo contendere or is found guilty of a crime*, a court may stay the entering of judgment, defer further proceedings, and place the defendant on probation." (emphasis added).

33. The statute only permits a court to enter a PBJ in three circumstances, each one requiring a finding of guilt.

34. Thus, both federal courts, *Stutzman v. Krenik*, 350 F. Supp. 3d 366, 379 (D. Md. 2018) (holding that a PBJ under Maryland law constitutes a "conviction" when adjudicating claims under 42 U.S.C. § 1983), and state courts, *Howard Cty. Dep't Of Soc. Servs. v. Linda J*., 161 Md. App. 402, 410 (2005); *Board of License Commissioners for Anne Arundel County v. Corridor Wine, Inc.*, 361 Md. 403, 408 n. 4 (2000), have uniformly determined that a finding of guilt necessarily precedes a PBJ under the Maryland statute.

35. The fact that Maryland state law may subsequently treat or label these criminal

dispositions differently than federal law is irrelevant when the federal determination controls. *See Rudman v. Leavitt*, 578 F. Supp. 2d 812, 815 (D. Md. 2008) (holding that the material inquiry is how federal law treats a guilty plea as a conviction, not how state law may treat a guilty plea in the future via expunction); *see also Dickerson*, 460 U.S. at 115 (holding that expunction under state law does not alter the historical fact of the conviction).

36. The definition of a single term, such as "conviction," can often vary between state and federal law due to the distinct spheres in which the two operate.

37. In *In re Thompson,* 16 F.3d 576, 579 (4th Cir. 1994), the Fourth Circuit held that court costs arising from a Virginia criminal conviction could be defined as "non-penal" under state common law, while simultaneously being a condition of a criminal sentence under the Bankruptcy Code. The court reasoned that Virginia law developed with consideration for an entirely different set of policy needs and objectives than those facing the drafters of the Bankruptcy Code. *Id.*

38. The purpose of the Maryland PBJ statute, as recently noted by the Maryland Court of Special Appeals, is to "provide the defendant an opportunity to avoid the stigma of a conviction." *Schmidt v. State*, 245 Md. App. 400, 409 (2020). Concern for the societal stigmas of state criminal convictions played no consideration in the writing of the Bankruptcy Code.

39. When the Circuit Court for Baltimore County placed Plaintiff on probation under Md. Code Ann., Crim. Proc. § 6-220, the court made an irrefutable finding of guilt, which firmly established the disposition as a "conviction" for purposes of federal law.

40. As such, any accompanying restitution order became per se nondischargeable under § 1328(a)(3) and Count 1 of Plaintiff's Complaint has failed to state a claim upon which relief can be granted.

**D. Plaintiff's interpretation of § 1328(a)(3) would interfere with long-standing judicial policy against federal interference with state criminal prosecutions**

41. The Supreme Court emphasized in *Kelly v Robinson*, 479 U.S. 36, 49-50 (1986), the necessity that bankruptcy law not hamper the flexibility state criminal judges possess in crafting punishments that balance the many goals of the criminal justice system.

42. The *Kelly* Court drew attention to the Court's long-standing fundamental policy against federal interference with state criminal prosecutions and the "deep conviction that federal bankruptcy courts should not invalidate the results of state criminal proceedings ...." *Id*. at 47.

43. This policy is of such importance that Congress needed less than six months to amend the Bankruptcy Code to explicitly include § 1328(a)(3) after the Supreme Court held in *Pennsylvania Dep't of Pub. Welfare v. Davenport*, 495 U.S. 552, 564 (1990), that restitution obligations imposed as conditions of probation in state criminal actions were dischargeable given the broader discharge afforded to Chapter 13 debtors. The Victims' Rights and Restitution Act of 1990, Pub. L. No. 101-647, 104 Stat. 4820 (codified as amended at 42 U.S.C. 10606).

44. In addition to lacking any relevant legal support, Plaintiff's interpretation of § 1328(a)(3) runs afoul of this basic tenet of bankruptcy jurisprudence.

45. Plaintiff's interpretation, ironically, could lead state criminal courts to eschew granting criminal defendants the very benefit that Plaintiff received. Here, Plaintiff's PBJ allowed her to avoid formal entry of a criminal judgment and further provided her with a faster path to expungement.

46. If the Bankruptcy Code can be manipulated into a means to exploit leniency in state criminal sentencing and circumvent a guilty perpetrator's restitution payments to their crime victims, the incentive for judicial lenity greatly diminishes.

47. As the *Thompson* court stated, "[t]he bankruptcy laws are not a haven for criminal

offenders, but are designed to give relief from financial overextension." 16 F. 3d at 579 (*quoting* H. Rep. No. 595, 95th Cong., 2nd Sess. 342, *reprinted in* 1978 U.S. Code Cong. & Admin. News 5787, 6299).

**II. THE COURT SHOULD DISMISS COUNT II OF THE COMPLAINT BECAUSE, AT A MINIMUM, DEFENDANT HAS AN OBJECTIVELY REASONABLE BASIS THAT PLAINTIFF'S DEBT IS NONDISCHARGEABLE**

48. A discharge order "operates as an injunction" against any act to collect a discharged debt. 11 U.S.C. § 524(a)(2).

49. 11 U.S.C. § 105 allows a court "to issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code.

50. The Supreme Court held in *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1801 (2019), that a court is only authorized to impose sanctions under 11 U.S.C. §§ 524 and 105 when there exists "no objectively reasonable basis for concluding that the creditor's conduct might be lawful under the discharge order."

51. Given the reasons stated herein, there exists more than an objectively reasonable basis for Defendant's assertion that Plaintiff's debt is nondischargeable under § 1328(a)(3), making any collection efforts in complete accord with § 524(a)(2).

52. As such, Count II of Plaintiff's Complaint has failed to state a claim upon which relief can be granted.

WHEREFORE, Defendant, the State of Maryland Central Collection Unit, requests that this Honorable Court:

1. Determine that the money owed to DPP as a result of Plaintiff's judgment of restitution is nondischargeable pursuant to 11 U.S.C. §1328(a)(3);

2. Dismiss Plaintiff's Complaint with prejudice;

3.      Award to Defendant such other and further relief as this Court deems necessary and appropriate.

Respectfully submitted,

BRIAN E. FROSH
ATTORNEY GENERAL OF MARYLAND

Dated: June 17, 2021

*/s/ Michael D. Watts*
Michael D. Watts # 21284
Staff Attorney

*/s/ Susan C. Scanlon*
Susan C. Scanlon #28832
Assistant Attorney General

Office of the Attorney General
Department of Budget & Management
300 W. Preston St., Rm 407
Baltimore, MD 21201
410-767-1234 (tel) 410-333-5887 (fax)
michael.watts2@maryland.gov
susan.scanlon@maryland.gov
*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that on June 17, 2021, a copy of the foregoing Motion to Dismiss and the proposed Order were served via ECF to all persons and entities entitled to receive notice of electronic filing in this case and via first class mail postage pre-paid to:

| | |
|---|---|
| Dedre Vaniece Feyijinmi<br>35 Pendragon Court<br>Reisterstown, MD 21136 | Marie Lott Pharaoh<br>mariepharaoh@gmail.com |

                                              */s/ Michael D. Watts*
                                              Michael D. Watts
                                              Staff Attorney